Sylvia CASPER, Individually and on behalf of all others similarly situated

v.

CUNARD LINE, LIMITED.

Civ. A. No. 81–3757.

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1983.

Charles Sovel, Freedman & Lorry, Philadelphia, Pa., for plaintiffs.

E. Alfred Smith, Edward J. Charlton, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff filed a class action in trespass in the Court of Common Pleas for Philadelphia County and complained that she and all others similarly situated were wrongfully induced to purchase passage for a Norwegian fjord cruise aboard defendant's vessel, the S.S. Queen Elizabeth II. Plaintiff alleges that the vessel "suffered a breakdown" and failed to follow its advertised itinerary.[1] Plaintiff further avers that defendant made intentional or reckless misrepresentations of material facts because it knew or should have known that the vessel was incapable of undertaking the scheduled cruise but failed to disclose this information to the passengers prior to their departure.

On September 14, 1981, defendant removed the action to this court. Defendant concedes that *in personam* maritime claims are not removable under 28 U.S.C. § 1441 unless there is an independent basis for federal jurisdiction. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1958); *Superior*

1. It is undisputed that the cruise stopped at the scheduled ports of Bremerhaven, Bergen, Trondheim and Stavanger but failed to reach Flam, Gudvangen (Vik), and Hellesylt-Geiranger. The ship stopped at Aalesund as a substitute port for Hellesylt-Geiranger.

*Fish Co. v. The Royal Globe Insurance Co.,* 521 F.Supp. 437 (E.D.Pa.1981). Therefore, unless there is federal jurisdiction by reason of diversity, the case was not removable to federal court. District courts have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $10,000. 28 U.S.C. § 1332. In determining the existence of diversity of citizenship, only the citizenship of the named parties need be considered. *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In a class action for money damages, the claim of each member must exceed the $10,000 jurisdictional amount; no aggregation of class claims is possible. *Zahn v. International Paper Company,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Rauch v. United Instruments,* 548 F.2d 452 (3d Cir.1976).

Plaintiff is a citizen of the Commonwealth of Pennsylvania and defendant is incorporated in and has its principal place of business in Great Britain. It is clear that citizenship of the named parties is diverse. But it is not clear if the amount in controversy meets the jurisdictional minimum. Plaintiff asserts claims for: (a) refund of the cost of the cruise, $949; (b) reimbursement of expenses incurred in travelling to and from England: approximately $1,500; (c) compensatory damages and punitive damages: in excess of $10,000.

In determining whether the jurisdictional amount requirement has been satisfied, we apply the "legal certainty" test under *St. Paul Mercury Indemnity v. Red Cab Company,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938):

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288, 58 S.Ct. at 590.

Whether plaintiff meets the jurisdictional amount depends on whether a claim for compensatory and punitive damages can be maintained under the law that is applicable. Which law applies is determined by the choice of law rules of Pennsylvania, the forum state (*see, Klaxon v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); Pennsylvania would apply the law of the state with the most extensive contacts. The state with the most significant relationship to this controversy is Pennsylvania. Plaintiff purchased her ticket in Pennsylvania; because she alleges she was fraudulently induced to do so, the injury, if any, may be deemed to have occurred in this state although the consequences were suffered abroad. Under the law of Pennsylvania, it is doubtful that plaintiff can recover damages for emotional distress since such relief is rarely awarded without a corresponding physical impact. *See, D'Ambrosio v. Pennsylvania National Mutual Co.,* 262 Pa.Super. 331, 396 A.2d 780 (1978); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). However, punitive damages can be recovered in a trespass action for fraud where the plaintiff proves malice or wanton disregard on the part of the defendant. *Rainbow Trucking, Inc. v. Ennia Ins. Co.,* 500 F.Supp. 96 (E.D.Pa.1980); *Banks v. Travelers Insurance Co.,* 60 F.R.D. 158 (E.D. Pa.1973). The plaintiff asserts a claim for punitive damages and we cannot now say it appears to a "legal certainty" that the minimum jurisdictional amount cannot be recovered. *St. Paul Indemnity Co., supra.*

## CLASS CERTIFICATION

Plaintiff moves for class certification pursuant to Fed.R.Civ.P. 23(b)(1) or alternatively, 23(b)(3). Before a class action may be maintained under Rule 23, the action must meet the prerequisites of Rule 23(a) and, in addition, one of the alternative requirements of Rule 23(b). There are four prerequisites outlined in Rule 23(a): (1) the class is so numerous joinder of all members in a single action is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative party or parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interest of the class.

■ The defendant concedes there were 1,692 fare-paying passengers on the cruise. However, it attempts to exclude the vast majority of passengers from the putative class by categorizing them as foreign nationals whose native countries may not recognize or enforce a judgment rendered in the United States. But "... an American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize and enforce it." *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 996 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). "Near certainty" (*Id.*) is the standard for abstention and defendant has failed to make such a showing.[2] Defendant also seeks to reduce the class by those passengers who have settled their claims and released the defendant as well as those whose claims are barred by alleged limitation provisions of the contract of passage. While these contentions have merit, exclusion of these persons would not preclude the plaintiff from representing a sufficient number of passengers to warrant class certification. There is no reason to believe that plaintiff would not act fairly and adequately to protect the interests of the class if she were appointed its representative. The problems with regard to class certification are not with numerosity or representatives but with commonality and typicality.

■ The events which occurred on the cruise, the itinerary of the vessel and its navigational deficiencies, their cause and the time at which the owner knew or had reason to know of its unseaworthiness are all questions of fact common to each passenger. In an action for breach of contract the commonality as to questions of law and fact might predominate. But this is an action for fraudulent misrepresentation of fact. The representations were both written and oral and varied at least by nationality group if not from passenger to passenger. In Pennsylvania, such a cause of action requires that the plaintiff acted in reliance upon the defendant's misrepresentations. *Thomas v. Seamans,* 451 Pa. 347, 304 A.2d 134 (1973); *Edelson v. Bernstein,* 382 Pa. 392, 115 A.2d 382 (1955). Reliance upon the representations made to each passenger will vary from person to person. Consequently, in Pennsylvania this cause of action is not considered appropriate for resolution by class action. *See, Klemow v. Time Incorporated,* 466 Pa. 189, 197 n. 17, 352 A.2d 12, 16 n. 17, *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976).

Similar difficulties arise with respect to damages. Passengers satisfied with the substituted itinerary would be entitled to nominal, if any, damage; passengers travelling specifically to see particular fjords or ports thereon might suffer greater damage. Moreover, the differences in prices paid for the cruise and travel to and from the port of embarkation present additional variables. Although these might be accounted for by damage formulae, Ms. Casper's claims are not likely to be typical of other passengers on the cruise.

■ Furthermore, Pennsylvania is hardly the only or even primary jurisdiction with interest in this matter. Pennsylvania choice of law requires review of the interests underlying the particular issue before the court. This rule

---

2. Defendants' one affidavit on the subject is far from conclusive:

I have been asked to consider whether the English High Court would automatically recognize a U.S. Class Action Judgment in favour of Cunard as *res judicata* in a subsequent action by a U.K. or other non-U.S. citizen against Cunard in the English High Court, even if that U.K. citizen was regarded (by the U.S. Court) as having been a part of the class in the U.S. law suit. So far as I am aware, there have been no English cases in which the English Court has had to consider whether or not the English law rules of *res judicata* can apply towards a Judgment of a U.S. Court in a Class Action.... The question must remain open until actually considered by an English Court.
Affidavit of Richard J.P. Aikens at 4.

" . . . gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context" and thereby allows the forum to apply "the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation'."

*Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796, 806 (1964) *quoting Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Moreover, under the doctrine of depecage, different issues even in a single case arising out of a single set of facts might be decided according to the laws of different jurisdictions. *See, Broome v. Antlers' Hunting Club,* 595 F.2d 921, 923 n. 5 (3d Cir.1979).

■ According to the defendant's records (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class certification at 14), the passengers were from 15 different countries and 26 different states. Because the representations made in the promotional literature and the sales contract varied with the place where passage was purchased, the laws of many countries might have to be applied for just adjudication of this matter. Consequently, questions of law pertaining to misrepresentation, reliance, liability of principals on behalf of agents and the nature of damages to be awarded are by no means common. Plaintiff does not meet the prerequisites to class certification under Rule 23(a).

But even if plaintiff did satisfy the prerequisites under Rule 23(a), this would not be sufficient for the certification of a class action. *Giordano v. Radio Corp. of America,* 183 F.2d 558, 560 (3d Cir.1950). Plaintiff must still qualify under one of the three categories of Rule 23(b); she seeks certification under Rule 23(b)(1) and (b)(3).

Rule 23(b)(1) provides that an action may be maintained as a class action if the prosecution of separate actions by individual members of the class would create a risk of (A) inconsistent adjudications which would establish incompatible standards of conduct for the party opposing the class or (B) adjudication which would as a practical matter be dispositive of the interests of the other members of the class not parties to such adjudication.

■ Plaintiff claims that certification pursuant to Rule 23(b)(1)(A) is necessary to protect the party opposing the class from having to relitigate an issue numerous times with inconsistent results. But 23(b)(1)(A) is designed to prevent situations in which different courts establish incompatible standards of conduct. It is not meant to apply where the risk of inconsistent results in individual actions is merely the possibility that the defendants will pay damages to some claimants but not to others. *McDonnell Douglas Corporation v. U.S. District Court, Central District of California,* 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied sub nom. Flanagan v. McDonnell Douglas Corporation,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

Rule 23(b)(1)(B) is equally inapplicable. Judgment in the instant action will not effectively predetermine the rights of other potential plaintiffs. *See, Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921). Nor is this a case where a limited fund exists so that if litigants are allowed to proceed on an individual basis, there is a risk that those who sue first will deplete the fund. Administrative Committee's Notes, Rule 23, 39 F.R.D. 69, 101 (1966).

Rule 23(b)(3) is inappropriate because the common questions of fact and law which do exist fail to predominate over numerous questions as to both liability and damages affecting individual members of the class. In addition, the difficulties likely to be encountered in the management of a class action of this type are prohibitive. Of the 1,692 passengers who sailed on the cruise complained of, over 1,300, are from the United Kingdom. Less than 300 are from the United States and only 7 gave a home or travel agent's address in Pennsylvania. Pennsylvania is hardly a forum of conveniens.

Since the class plaintiff seeks does not meet the requirement of any subsection of

Rule 23(b), class certification must be denied.