Honorable Bernard J. AVELLINO, Plaintiff,

v.

Honorable John W. HERRON, et al., Defendants.

No. Civ.A. 97–152.

United States District Court, E.D. Pennsylvania.

Feb. 17, 1998.

Joseph P. Green, Jr., Duffy & Green, West Chester, PA, John J. Duffy, Duffy & Green, West Chester, PA, for plaintiff.

David M. Donaldson, Philadelphia, PA, H. Robert Fiebach, Cozen and O'Connor, Philadelphia, PA, for John W. Herron, defendant.

David M. Donaldson, Philadelphia, PA, Arlin M. Adams, Schnader Harrison Segal & Lewis, Philadelphia, PA, for Alex Bonavitacola, defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Defendant the Honorable John W. Herron moves the Court for certification to the Third Circuit of certain questions of law, and in the alternative, for reconsideration of the Court's Order–Memorandum of December 16, 1997 ("Order–Memorandum") in which the Court denied Judge Herron's motion to dismiss the complaint for lack of subject matter jurisdiction, for failure to state a claim, and on the basis of waiver, collateral estoppel and qualified immunity.[1] Ms. Nancy Sobolevitch is the Court Administrator of Pennsylvania and, in that capacity, seeks to participate in these proceedings as amicus curiae. For the reasons that follow, the Court will allow Ms. Sobolevitch to participate as amicus curiae in the case, but will deny Judge Herron's motion for certification and reconsideration.

## I. INTRODUCTION

This case arises from a claim by plaintiff the Honorable Bernard J. Avellino that Judge Herron, in his capacity as administrative judge, retaliated against him, in violation of his First Amendment rights, by transfer-

---

1. Defendant the Honorable Alex Bonavitacola was dismissed from the case by the same Order– Memorandum and consequently is not a part of these proceedings.

ring him to a less desirable judicial assignment as a result of Judge Avellino's public criticism of Judge Herron. The circumstances surrounding this controversy are set forth in the Court's Order–Memorandum, *Avellino v. Herron*, 1997 WL 781497 (E.D.Pa. Dec.16, 1997), familiarity with which is presumed for purposes of this Memorandum.

## II. DISCUSSION

### A. *Motion for Leave to Participate as Amicus Curiae*

■ Ms. Sobolevitch is the Court Administrator of Pennsylvania. In that capacity, she has filed a motion for leave to file as amicus curiae. Ms. Sobolevitch represents that she is the highest official of the Administrative Office of the Pennsylvania Courts, the Supreme Court of Pennsylvania's administrative arm. As such, her function is to carry out those administrative and supervisory responsibilities over Pennsylvania's unified judicial system which are expressly delegated to it by the Supreme Court of Pennsylvania. In sum, according to Ms. Sobolevitch, she acts on behalf of the Supreme Court of Pennsylvania in dealing with all non-adjudicatory matters.

■ A district court has inherent authority to allow amicus curiae to participate in proceedings. *Martinez v. Capital Cities/ABC–WPVI*, 909 F.Supp. 283 (E.D.Pa. 1995); *Waste Management of Pa. v. City of York*, 162 F.R.D. 34 (M.D.Pa.1995). The Third Circuit has said that "permitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to a court's understanding." *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir.1987). Therefore, a court may grant leave to appear as an amicus if the information offered is "timely and useful." *Waste Management*, 162 F.R.D. at 36 (citing *Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J.1985), *aff'd*, 782 F.2d 1033 (3d Cir.1986)).

Because Ms. Sobolevitch is uniquely situated at the administrative apex of the Pennsylvania unified judicial system, and as a result, is intimately familiar with the interaction between the Supreme Court of Pennsylvania and the Court of Common Pleas of the First Judicial District, she can provide "timely and useful" information that will aid the Court in its understanding of the issues before it. Therefore, the Court will exercise its discretion and grant her leave to participate as amicus curiae.[2]

### B. *Motion for Reconsideration*[3]

■ The Third Circuit has instructed that "[t]he purpose of a motion for reconsidera-

---

**2.** Ms. Sobolevitch is represented in this matter by Schnader Harrison Segal & Lewis, the same law firm that represented President Judge Alex Bonavitacola, a defendant who was previously dismissed by the Court. Given the history of tension between the Office of President Judge and the Supreme Court of Pennsylvania, the Court has expressed concern about the potential for a conflict of interest. *See, e.g., Blake v. Papadakos*, 953 F.2d 68 (3d Cir.1992) (dispute between Supreme Court of Pennsylvania and president judge of Philadelphia County Court of Common Pleas); *Cuffeld v. Nix*, 1996 WL 729045 (E.D.Pa. Dec.17, 1996) (dispute between president judge of Pennsylvania Traffic Court and Supreme Court of Pennsylvania); *see also* Pennsylvania Rules of Professional Conduct, R. 1.7, 1.9 (conflict of interest). Accordingly, the Court asked the parties to state their position as to whether Schnader Harrison Segal & Lewis's representation of Ms. Sobolevitch violates any of the Pennsylvania Rules of Professional Conduct. Neither plaintiff nor Judge Herron has any objection to Schnader Harrison Segal & Lewis's representation of Ms. Sobolevitch, and learned counsel has assured the

Court that a conflict of interest does not exist. *See* Pennsylvania Rules of Professional Conduct, R. 1.9 (prohibiting counsel who formerly represented a client in a matter from representing a person in the same matter if the person's interests are materially adverse to a former client's, unless former client consents after consultation). Moreover, former Third Circuit Court of Appeals Judge Arlin L. Adams, the lawyer at Schnader Harrison Segal & Lewis handling this matter, has represented the Supreme Court of Pennsylvania in other matters in the federal Court. Of course, should circumstances change during the course of the litigation, counsel shall promptly advise the Court.

**3.** On January 15, 1998, after filing his motion for reconsideration and, in the alternative, for certification, the defendant filed a notice of appeal. Plaintiff argues that the defendant's notice of appeal divested this Court of jurisdiction to rule upon defendant's motion for reconsideration. Defendant, on the other hand, argues that Rule 4(a) of the Federal Rules of Appellate Procedure suspends the transfer of jurisdiction when a Rule

tion is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). Thus, this standard will be applied to defendant's motion for reconsideration.

### 1. *Qualified Immunity*

■ First, the defendant argues that the Court erred when it denied his motion to dismiss on the basis of qualified immunity. More specifically, he contends that the Court overlooked the element of qualified immunity which requires that the defendant cause harm to the plaintiff. The Court resolved this issue by applying the teachings of *Anderson v. Davila,* 125 F.3d 148 (3d Cir. 1997) (holding that a legitimate and constitutional act can become unconstitutional when taken in retaliation for exercise of First Amendment speech) and *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (same), and nothing in the motion for reconsideration persuades the Court that its reasoning under those cases was erroneous.

### 2. *Rooker–Feldman and Collateral Estoppel*

■ Second, the defendant argues that the Court erred when it denied his motion to dismiss on the grounds of *Rooker–Feldman* and collateral estoppel. Both Judge Herron and Ms. Sobolevitch predict dire consequences should the Court's Order–Memorandum become the law of Pennsylvania. To that end, defendant Herron contends that this Court "[has placed] a single federal judge [in the position] to reject determinations made by the state's highest court ... result[ing] in the federal courts micro. man-

aging the state courts ... [in defiance of] the Pennsylvania Constitution ·...." (Def.'s Mem. at 14–15, doc. no. 28). In turn, amicus Ms. Sobolevitch is alarmed·that, in her view, a federal judge ·has "declare[d] that the Pennsylvania Supreme Court is presumptively incapable of adjudicating challenges to administrative·decisions by judges over whom it has administrative authority [which will] seriously dilute these historic powers, and make·[the] Supreme Court [of Pennsylvania's] adjudication relating to the administration of the Pennsylvania judiciary subject to collateral attack in the federal courts." (Mem. for Leave to Participate as Amicus Curiae at 3, doc. no. 30).[4]

In substance, the defendant and the amicus apocalyptically predict that, under the Court's Order–Memorandum, all the constitutional and prudential restraints that federalism and comity demand, and that *Rooker–Feldman* helps to provide, would be erased in favor of a vision of a Pennsylvania judiciary subject to the officious superintendency of the federal courts. Regrettably, the defendant and the amicus base their arguments on a·misunderstanding of the breadth and the import of the Court's Order–Memorandum.

To. the contrary, the Order–Memorandum is.narrowly drawn in scope. Specifically, the Court held that under the standard supplied by. Federal Rule of Civil Procedure 12(b)(1):

> ·Viewing the allegations in the amended complaint in the light most favorable to Judge Avellino, the Court cannot· satisfy itself [at this time based on the record before it] that [in light of] the Supreme Court of Pennsylvania's past involvement in the management and administration of the affairs of the First Judicial District, *and* its appointment of Judge Herron to

59 motion for a new trial is pending. He contends that his motion for reconsideration should be treated like a Rule 59 motion so that jurisdiction is retained by the district court.

Defendant's position is supported by dicta in the Third Circuit case of *Venen v. Sweet,* 758 F.2d 117, 122 (3d Cir.1985), and by cases rendered by other circuit courts. *See United States v. Moats,* 961 F.2d 1198, 1203–04 (5th Cir.1992); *Rodriguez v. Banco Central,* 790 F.2d 172, 176 (1st Cir.1986); *Southern Ute Indian Tribe v. Amoco Prod. Co.,* 2 F.3d 1023, ·1028 (10th Cir.1993). Furthermore, the plaintiff, admitting that there is

no caselaw to the contrary, merely points to the plain language of Rule 4 in support of his position. In light of supporting precedent and·in the absence of any precedent prohibiting this Court from ruling upon the defendant's motion for reconsideration, the Court finds that it has jurisdiction to rule upon the motion.

**4.** The amicus fears that every decision by an individual appointed by the Supreme Court of Pennsylvania, including disciplinary actions, will be subject to review by the federal courts. (Amicus Mem. at·3, doc. no.· 30).

serve as administrative judge of the trial division at its "pleasure" did not render Judge Herron's actions in reassigning Judge Avellino fairly attributable to the Supreme Court of Pennsylvania. Because if the Supreme Court of Pennsylvania sat in judgement of the legality of its own actions, the procedure which the state provided Judge Avellino for adjudicating his constitutional claims *may* not have satisfied the requirements of the due process clause, the Court will not invoke the *Rooker–Feldman* doctrine *at this stage* of the proceedings.

*Avellino v. Herron,* 1997 WL 781497 at *5, ¶ 24 (E.D.Pa. Dec.16, 1997) (emphasis added). In short, the Court's Order–Memorandum did not find *as a fact* that Judge Avellino *was not* provided a full and fair hearing, or that the Supreme Court of Pennsylvania stood in judgment of its own actions, or that the Supreme Court of Pennsylvania is "presumed bias" in this case. *See* (Def. Mem. at 4, doc. no. 28) (characterizing the Court's Order–Memorandum). Nor does the Order–Memorandum open the door of the federal courts to disappointed litigants in the state court, or necessarily make the decisions of the administrative judges of the various state courts proxies for those of the Supreme Court of Pennsylvania. Rather, the Court simply declared that *at this stage* of the proceedings, given the allegations and apparent circumstances in this case, and under the standard supplied by Rule 12(b)(1), it could not satisfy itself that *Rooker–Feldman* applied. *See Pinewood Estates of Michigan v. Barnegat Tp. Leveling Bd.,* 898 F.2d 347, 349 n. 4 (3d Cir.1990) (describing the standard for reviewing motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as being the same as standard for a motion to dismiss under Rule 12(b)(6) and citing the "no set of facts" standard under *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The issue of whether the state provided Judge Avellino an adequate forum to litigate his constitutional claim, which includes as subtext whether the hearing afforded to Judge Avellino by the Supreme Court of Pennsylvania was full and fair, is complex and far from final. While the *Rooker–Feld-*

*man* doctrine is intended to assist the federal courts in the sensitive process of calibrating the scales of federal-state relations, it is not a talisman which, by its mere invocation, *ipso facto* defeats all federal claims against state actors. For this reason, the issues raised in Judge Herron's request for reconsideration would be more appropriately addressed after a complete factual record has been assembled, thus, allowing the Court to render a final decision on the merit of Judge Herron's jurisdictional defenses based on the circumstances of this particular case.

As it currently stands, Judge Herron's motion for reconsideration is predicated on a misreading of the Court's Order–Memorandum and therefore, asks, in essence, that the Court reconsider a decision which it never made. Moreover, to the extent that Judge Herron readvances the same arguments that the Court previously considered but did not adopt, such is not a basis for reconsideration either. Thus, reconsideration is not appropriate in this case.

### C. *Motion For Certification*

■ Section 1292(b) of Title 28 of the United States Code imposes three criterion for an interlocutory appeal:

> The order must (1) involve a controlling issue of law, (2) offer substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, materially advance the ultimate termination of the litigation.

*Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974); *Zygmuntowicz v. Hospitality Investments Inc.,* 828 F.Supp. 346, 353 (E.D.Pa.1993). "The decision to certify is within the sound discretion of the trial court and should be exercised bearing in mind the strong policy against piecemeal appeals." *Kelly v. Ford Motor Co.,* 942 F.Supp. 1044 (E.D.Pa.1996). Further, it should be used only in rare cases where an immediate appeal would avoid expensive and protracted litigation. *Piazza v. Major League Baseball,* 836 F.Supp. 269, 270 (E.D.Pa.1993). With these considerations in mind, the Court turns to the specifics of defendant's motion.

■ Judge Herron requests that this Court certify for interlocutory appeal its Order–Memorandum. Specifically, he states that several issues relating to its *Rooker–Feldman* and collateral estoppel arguments are appropriate for certification because the Order–Memorandum contains controlling questions of law that present substantial grounds for differences of opinion.[5] Further, Judge Herron contends that immediate appeal would materially advance the ultimate termination of the litigation because "should the Court of Appeals rule that Judge Avellino's claims are barred by *Rooker–Feldman*, collateral estoppel or res judicata, this action would be terminated while it was still in its earliest stages." (Def.Mem. at 10, doc. no. 28).

Judge Herron's arguments must be rejected because, as discussed above, a fully informed decision on the *Rooker–Feldman* and collateral estoppel issues has not been reached. Therefore, certification of the *Rooker–Feldman* and collateral estoppel issues for appeal would not materially advance the ultimate termination of this litigation because the Court of Appeals would be unable to answer the questions tendered to it by the appeal without further factual development of the record. Certification, without an adequate factual record, would lead to piecemeal review by the Court of Appeals, and thus, undermine the goal of judicial economy. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (noting that "piecemeal appellate disposition" of a single controversy can have a "debilitating effect on judicial administration").

## III. CONCLUSION

In conclusion, the motion by Judge Herron to certify the Court's Order–Memorandum and, in the alternative, for reconsideration is denied. The Court is unpersuaded that any manifest error of law exists with respect to the Court's rejection of the qualified immunity argument presented in defendant's motion to dismiss plaintiff's amended complaint. As

to the defendant's *Rooker–Feldman* and collateral estoppel arguments, the Court has not ruled on the applicability of the doctrines to this case, and therefore, defendant's motions for reconsideration and certification are premature.

5. Defendant indicated that he intends to appeal the denial of the motion to dismiss on *Rooker–Feldman* grounds under the collateral order doctrine. *See Bryant v. Sylvester*, 57 F.3d 308 (3d Cir.1995), *vacated*, 516 U.S. 1105, 116 S.Ct. 899,

133 L.Ed.2d 834 (1996). The Court does not comment upon, nor should anything in its memorandum be construed as addressing, whether the collateral order doctrine is applicable to a district court's *Rooker–Feldman* determinations.